## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **1:07-cr-00804-SWK** |
| | § | |
| **SILVESTRE RICO BELTRAN,** | § | |
| **Defendant** | § | |

## MOTION TO SUPPRESS EVIDENCE

TO THE HONORABLE JUDGE, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK:

COMES NOW, SILVESTRE RICO BELTRAN, Defendant in the above styled and numbered cause, and files this, his motion to suppress certain evidence that was illegally acquired by the Government and for cause would show the Court as follows:

I.

### FACTS

1.    SILVESTRE RICO BELTRAN is a forty-two year old male.  At the time of this incident, Mr. BELTRAN weighed approximately 335 pounds and suffered from several heart related conditions.  Approximately three weeks before his trip to the New York area, Mr. BELTRAN had a "Coronary Stent System" implant procedure in Texas.  Mr. BELTRAN had been under the care of a cardiologist and was under a doctor's orders to ingest no less than five prescribed medications daily.  Further, Mr. BELTRAN was under doctor's orders to carry sublingual nitroglycerin pills in case of chest pain. See Exhibit A.  Mr. BELTRAN complied with his doctor's orders as prescribed until July 23, 2007.

2.      On July 22, 2007, at approximately 5:30 p.m., Immigration and Customs Enforcement Agents (ICE) began surveillance of SILVESTRE RICO BELTRAN, who was a passenger in a vehicle registered to Carlos Pena Ontiveros.  Less than twelve hours later, ICE agents made a warrantless entry into a private dwelling without consent and arrested Mr. BELTRAN without a warrant.

3.      Mr. BELTRAN and his companion asserted their presence in the dwelling place as overnight guests.  Mr. BELTRAN and his companion repeatedly denied the warrantless entry by the federal agents.  The federal agents continued their demand to enter without the consent of Mr. BELTRAN or his companion.  Finally, a female agent (name unknown) expressed her need to use the restroom in Spanish.  Based upon this trickery, Mr. BELTRAN and his companion unlocked and opened the front door. The warrantless entry at 516 Pugsley Avenue, Brooklyn, New York, occurred at approximately 4:00 AM.  ICE agents made their entry while brandishing automatic machine guns and other service weapons.  ICE agent's show of authority, coupled with dark of night and unfamiliar surroundings created an atmosphere of fear and intimidation.

4.      Between six and eight armed agents entered the apartment and began to search the residence.  Mr. BELTRAN was ordered to sit on a bed while agents searched the property.  Mr. BELTRAN was repeatedly questioned and intimidated by the federal agents.

5.      Mr. BELTRAN attempted to secure his heart medications as he began to experience shortness of breath and chest pain.  Agents for the government denied him access to his properly prescribed medications and continued to intimidate and question him.  Mr. BELTRAN would not receive his medication for more than seven hours.

6.      A short time after the warrantless entry, Mr. BELTRAN was handcuffed and placed under arrest.  Mr. BELTRAN was questioned again without proper warnings.  Mr. BELTRAN

repeatedly asserted his right to counsel by expressly asking for access to a lawyer.  Mr.

BELTRAN's unequivocal request for a lawyer was repeated throughout his interrogation.

7.      Mr. BELTRAN was taken from the apartment and driven to another location.  Mr.

BELTRAN was handcuffed and in the presence of federal agents throughout his movement in

the vehicle.  Mr. BELTRAN was eventually transferred to another vehicle and taken to a fixed

location where he was interrogated until he finally confessed some fifteen hours later.  Mr.

BELTRAN repeatedly asked for access to an attorney.  Mr. BELTRAN repeatedly asked for his

medication.  Mr. BELTRAN repeatedly asked his interrogators for access to his family by

telephone.

8.      Agents for the Government finally allowed Mr. BELTRAN access to his prescribed

medication approximately seven hours after his arrest.  Mr. BELTRAN continued to demand for

access to a lawyer and access to a telephone.  These requests were repeatedly denied.

9.      In the late afternoon hours of July 23, 2007, Mr. BELTRAN was forced to sign a "waiver

of speedy presentment" by federal agents.  The document was written in English.  Mr.

BELTRAN does not read or write English.  Mr. BELTRAN was tricked into believing that if he

signed the document, he would be set free within hours.  Agents for the Government explained to

Mr. BELTRAN that they only needed more time and that his signature would provide it.  See

Exhibit B.

10.     Despite Mr. BELTRAN's requests, federal agents continued to interrogate him and

within three hours, agents for the Government had a full confession in which Mr. BELTRAN

admitted knowledge of contraband in the vehicle from Texas.  Mr. BELTRAN signed and

initialed a "waiver" of Miranda rights some nineteen hours after his arrest. See Exhibit C.

II.

RELIEF SOUGHT

11.    The Defendant moves the Court to suppress the following evidence:

a.    All statements made, whether written or oral, and such other actions of this Defendant, which occurred at or subsequent to his arrest on July 23, 2007.

b.    All books, letters, notes, records, documents and other tangible things that were seized from SILVESTRE RICO BELTRAN and/or his property.

c.    Any and all documents, books, records, notes or other tangible things that were seized from the Defendant's person and or effects on or about July 23, 2007.

d.    The testimony of any law enforcement officers, agents and all other persons working in connection with such officers and agents, and all persons present at or near the location of the arrest of the Defendant [and the search of his person or effects] in regard to any statements or evidence acquired or objects seized as set forth in paragraphs a, b and c above.

III.

GROUNDS FOR RELIEF

12.    As grounds for this motion the Defendant would show the Court the following:

a.    The arrest of the Defendant was made without a warrant and without probable cause in violation of his rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.  Beck v. Ohio, 85 S.Ct. 223, 379 U.S. 89, 13 L.Ed.2d 142 (1964); Payton v. New York, 100 S.Ct. 1371, 445 U.S. 573, L.Ed.2d 639 (1980).

b.    All statements made by the Defendant at the time of and subsequent to his arrest were products of his illegal arrest.  Dunnaway v. New York, 99 S.Ct. 2248, 442

U.S. 200 60 L.Ed.2d 824 (1979); <u>Wong Sun v. United States</u>, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Fourth, Fifth and Fourteenth Amendments, United States Constitution.

c.    Any statement made by the Defendant was not freely nor voluntarily made but was given as a result of compulsion, coercion and/or persuasion. <u>Jackson v. Denno</u>, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 (1964); <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966); Fifth and Fourteenth Amendments, United States Constitution.

d.    Statements given by the Defendant were made as a result of an interrogation that occurred when the Defendant did not have advice of counsel, after he had invoked his right to counsel, in violation of the rights guaranteed to him by the Fifth, Sixth and Fourteenth Amendments, United States Constitution. <u>Edwards v. Arizona</u>, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed. 2d 378 (1981).

e.    That any alleged waivers by the Defendant of rights secured to him under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution were not valid because they were not voluntary and/or not a knowing and intelligent relinquishment of such rights. <u>Johnson v. Zerbst</u>, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed. 2d 854 (1973); <u>Edwards v. Arizona</u>, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed. 2d 378 (1981); <u>Michigan v. Jackson</u>, 106 S.Ct. 1404 (1986).

g.    That the search of the Defendant's habitation and/or vehicle was without a warrant and without probable cause and any consent to search was not voluntary. <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971); <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 93 S.Ct. 2014, 36 L.Ed. 2d 854

(1973); <u>Bumper v. North Carolina</u>, 391 U.S. 543, 88 S.Ct.1788, 20 L.Ed. 2d 797 (1968).

h.      That the Federal Agent's attempted waiver of speedy presentment was invalid on its face under Federal Rules of Criminal Procedure §§ 4(a), 5(a), 5(b) and 5(c). (*See* Exhibit A).

i.      That any confession and/or statements made by the Defendant were well beyond any "safe-harbor" provided by 18 U.S.C. §§ 3501(b), (c).

j.      For such other and further reasons as may appear or exist upon hearing of this cause.

IV.

<u>ARGUMENT</u>

**CONSENT TO ENTER**

13.     In *Schneckloth*, the Supreme Court held that the purported validity of consent to search is determined by its voluntariness under the totality of the circumstances surrounding the incident. Whether consent is voluntary or the product of coercion, is a question of fact.  In this case, SILVESTRE RICO BELTRAN'S purported consent to enter and/or search was gained through trickery and deceit after his express unwillingness to allow entry or search.  This Honorable Court should consider the "subtly coercive police questions as well as the possibly vulnerable subjective state of the person who consents .  ...[I]t is only by analyzing all the circumstances of an individual's consent that it can be ascertained whether in fact it was voluntary or coerced." <u>Id</u>. The Government has the burden of proving that any purported consent was freely and voluntarily given. <u>Bumper v. North Carolina</u>, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

14.     Further, the agent's entry into the property went well beyond the scope allowed by their initial intrusion.  The items the agents saw in "plain view" were in a back bedroom and well beyond any alleged entry beyond the habitation's vestibule.

**PROBABLE CAUSE TO ARREST**

15.     The arrest of SILVESTRE RICO BELTRAN was without a warrant.  See Exhibit D. Any such arrest is presumptively unreasonable and the burden is on the Government to prove that such arrest was based on probable cause. United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).     Agents for the Government may arrest without a warrant if they have probable cause. United States v. Watson, 96 S.Ct. 820, 423 U.S. 408, 46 L.Ed.2d 598 (1976).  That is, whether at the moment arrest was made, the agents had facts within their knowledge, (gained through legal means) that was sufficient to warrant a prudent man that the Accused had committed or was committing an offense. Beck v. Ohio, 85 S.Ct. 223, 225, 379 U.S. 89, 91, 13 L.Ed.2d 142 (1964).  The applicable standard for probable cause to arrest without a warrant is at least as rigorous as the standard of probable cause for arrest with a warrant.  Wong Sun v. United States, 83 S.Ct. 407, 371 U.S. 471, 9 L.Ed.2d 441 (1963); Whiteley v. Warden, 91 S.Ct. 1031, 401 U.S. 560, 28 L.Ed.2d 306 (1971).  Where a suspect is found in a private dwelling or any place where he has a reasonable expectation of privacy an arrest warrant is required before officers may enter and effectuate a legal arrest, unless there are exigent circumstances present which make the acquisition of a warrant impractical.  Payton v. New York, 100 S.Ct. 1371, 445 U.S. 573, 63 L.Ed.2d 639 (1980); United States v. Blake, 632 F.2d 731 (9th Cir. 1980).  In this case, the sworn affidavit provided by the Government is wholly void of any facts to even mildly support such a finding. See Criminal Complaint, attached as Exhibit D.

**FRUIT OF THE POISONOUS TREE**

16.    A statement, in this case purported consent to enter, is not admissible if it was gained through an illegal seizure of the Accused unless there are sufficient intervening facts which break the connection between the illegal seizure and the statement made. Dunaway v. New York, 99 S.Ct. 2248, 442 U.S. 200, 60 L.Ed.2d 824 (1979); Wong Sun v. United States, 83 S.Ct. 407, 371 U.S. 471, 9 L.Ed.2d 441 (1963).   In this case, the Government illegally entered the private dwelling without the voluntary consent of its occupants.  SILVESTRE RICO BELTRAN had a reasonable expectation of privacy in his chosen place of respite and the Government's entry into the same is repugnant to the ideals this Country is founded upon. "It is not admissible to do a great right by doing a little wrong…it is not sufficient to do justice by obtaining a proper result by…improper means." Miranda, quoting National Commission on Law Observance and Enforcement, Report on Lawlessness in Law Enforcement 5 (1931), Lord Chancellor of England (Lord Sankey).

## MIRANDA WARNINGS AND THEIR CONSTITUTIONAL PROTECTION

17.    In Miranda, the Supreme Court held that a Defendant, as a prerequisite to custodial interrogation, must be warned and informed of certain rights.  That is, the target of the interrogator shall be advised that:

1. he has the right to remain silent;

2. any statement he makes may be used against him;

3. his right to consult with an attorney or to have an attorney present during any questioning; and

4. if he cannot afford an attorney, that one will be appointed to represent him.

18.    Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694 (1966).  The *Miranda* warnings are an absolute prerequisite to interrogation and no amount of circumstantial evidence that a person may have been aware of his rights will suffice in place of the actual warnings.

<u>Miranda</u>, supra.  The fact that a confession or statement was ultimately attained, will not ex post facto fashion its admissibility.  Further, the police tactic of "question-first and warn-later" was expressly held to be violation of Miranda, in <u>Missouri v. Seibert</u>, 542 U.S. 600, (2004).  In that case, police would interrogate a defendant until a confession was gained and only then "warn" the individual of his rights under Miranda and the Fifth Amendment.  The Court there urged that "[s]trategists dedicated to draining the substance out of *Miranda* cannot accomplish by training instructions what *Dickerson* held Congress could not do by statute."

## PRE-ARRAIGNMENT INVOCATION OF RIGHT TO COUNSEL

19.    In <u>Edwards v. Arizona</u>, 101 S.Ct. 1880, 451 U.S. 477, 68 L.Ed.2d 378 (1981), the Supreme Court held that when an accused invokes his right to have counsel present during custodial interrogation, the suspect is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.  <u>Oregon v. Bradshaw</u>, 103 S.Ct. 2830, 462 U.S. 1039, 77 L.Ed.2d 405 (1983); <u>Smith v. Illinois</u>, 105 S.Ct. 490, 469 U.S. 91, 83 L.Ed.2d 488 (1984).  The Supreme Court has gone on to emphasize that *Edwards* established a per se rule that, once a suspect has expressed a desire to speak to counsel, a waiver of the right to counsel, no matter how voluntary, can never be valid if made in response to further police questioning.  <u>Solem v. Stumes</u> 104 S.Ct. 1338, 465 U.S. 638, 79 L.Ed.2d 579 (1984).   In examining an alleged waiver of counsel, a reviewing court should "indulge in every reasonable presumption against waiver."  <u>Brewer v. Williams</u>, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977).

20.    When considering a claim of violation of the rule of *Edwards v. Arizona*, the court must make two distinct inquiries.  "First, courts must determine whether the accused actually invoked his right to counsel .... Second, if the accused invoked his right to counsel, courts may admit his

responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois*, 469 U.S. 91, 95-96.  The rationale for the "bright line rule" in *Edwards*, was set forth by the Supreme Court in *Smith v. Illinois*; "In the absence of such a bright-line prohibition, the authorities through 'badger[ing]' or 'overreaching' - explicit or subtle, deliberate or unintentional - might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance.... [citations omitted].  With respect to the waiver inquiry, we accordingly have emphasized that a valid waiver 'cannot be established by showing only that [the accused] responded to further police initiated custodial interrogation."' Id., 469 U.S. at p.95; United States v. Webb, 755 F.2d 382 (5th Cir. 1985).  The burden of proving that an accused waived his previously invoked right to counsel rests on the government. United States v. Webb, supra, 389; United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984).

### VOLUNTARINESS OF CONFESSION

21.     The test for voluntariness is whether the confession was extorted by any sort of threats or violence or obtained by any direct or implied promise, however slight, or by exertion of any improper influence.  Hutto v. Ross, 97 S.Ct. 202, 429 U.S. 28, 50 L.Ed.2d 194 (1976); Brady v. United States, 90 S.Ct. 1463, 397 U.S. 742, 25 L.Ed.2d 747 (1970).  The court must determine whether, under the totality of the circumstances, the self-incriminating statements are a product of the accused's free will.  Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968); Boulden v. Holman, 89 S.Ct. 1138, 394 U.S. 478, 22 L.Ed.2d 433 (1969).

22.     The prosecution bears the burden of showing by a preponderance of the evidence that a confession is voluntary.  Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 626-27, 30 L.Ed.2d 618 (1972).  If an individual's will was overborne or if his confession was not the product of his rational intellect and freewill, his confession is inadmissible.  The standards are applicable

whether a confession was coerced by physical intimidation or by psychological pressure and is equally applicable to a drug-induced statement. <u>Townsend v. Sain</u>, 83 S.Ct. 745, 372 U.S. 293, 9 L.Ed.2d 770 (1963).

23.     The totality of the circumstances approach requires a reviewing court to consider the specific tactics utilized by the police in eliciting the admission, the details of the interrogation and the character of the accused. <u>Rachlin v. United States</u>, 723 F.2d 1373 (8th Cir. 1983). In this case, Agents for the Government elicited the signed "waiver" of *Miranda* rights nineteen hours after his arrest. Agents for the Government withheld physician-ordered medication from SILVESTRE RICO BELTRAN. Agents for the Government denied SILVESTRE RICO BELTRAN'S repeated requests for a lawyer. Agents for the Government intimidated the Defendant by brandishing automatic weapons and the use of vulgar and demeaning language. Agents for the Government attempted to gain Defendant's waiver of speedy presentment on false pretenses. Respectfully, the totality of these circumstances, command a finding of involuntariness of any statement made by SILVESTRE RICO BELTRAN.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this motion be set down for a hearing prior to trial and that upon hearing, it be in all things granted.

Respectfully Submitted,


/s/ Carlos A. Garcia _____
Carlos A. Garcia
Attorney- in -charge
State Bar No. 24048934
Southern District of Texas Bar No. 589236
1305 East Griffin Pkwy.
Mission, Texas 78572
Tel.: 956.584.1448
Fax: 956.584.7402

**Exhibit A**

## Doctors Hospital at Renaissance
### MEDICATION RECONCILIATION FORM

Page ___ of ___

ADMIT UNIT: _____   ATTENDING: Dr. B. Robalino

Height: 6.0   Weight: 335 lbs.   Circle Actual / Estimated

Allergies: List All — NKDA

**PRE-ADMISSION MEDICATION**

Include over the counter and herbal supplements

List obtained and reviewed by: _____

Nurse Signature _____   Date _____

| MEDICATION | DOSE | ROUTE | FREQUENCY | LAST DOSE | ON ADMISSION: This Column To Be Completed By MD | ON DISCHARGE: This Column To Be Completed By MD |
|---|---|---|---|---|---|---|
| | 75 mg | oral | daily | 7p | ☐ Continue  ☐ Discontinue | ☐ Cont  ☐ Dis  ☐ X ___ Do Not Take ___ days |
| | 20 mg | tab | daily @ bedtime | 7p | ☐ Continue  ☐ Discontinue | ☐ Cont  ☐ Dis  ☐ X ___ Do Not Take ___ days |
| | 60 mg | tab | daily | 7a | ☐ Continue  ☐ Discontinue | ☐ Cont  ☐ Dis  ☐ X ___ Do Not Take ___ days |
| | 10 mg | tab | daily | 7a | ☐ Continue  ☐ Discontinue | ☐ Cont  ☐ Dis  ☐ X ___ Do Not Take ___ days |
| | | tab | daily | | ☐ Continue  ☐ Discontinue | ☐ Cont  ☐ Dis  ☐ X ___ Do Not Take ___ days |
| | 325 g | tab | daily | | ☐ Continue  ☐ Discontinue | ☐ Cont  ☐ Dis  ☐ X ___ Do Not Take ___ days |
| | | | | | ☐ Continue  ☐ Discontinue | ☐ Cont  ☐ Dis  ☐ X ___ Do Not Take ___ days |

Source: ☐ Patient / Family ☐ List (if list is provided-reconfirm verbally with patient / family) ☐ Medication bottles brought by patient / family ☐ Drug Store ☐ Other: _____

PHYSICIAN SIGNATURE _____   DATE _____   TIME _____

> Your DOCTOR has written an order for you to be discharged. When you were admitted, you gave us a list of medications you were taking at home. Your DOCTOR has reviewed this list and determined that you may continue to take these medications
> **UNLESS IT IS NOTED AS "Do Not Take" or "Discontinue"**

PHYSICIAN SIGNATURE _____   ☐ Next Provider Not Known   ☐ Given to Patient   DATE _____   TIME _____

**ON DISCHARGE:** ☐ Fax/Sent to Next Provider

**NEW MEDICATIONS** to be completed by nurse on discharge (Include long acting medications the patient has received while in hospital):

**To Activate as an Order, Physician Signature Required**

DSR-PHR-33.0     2-Part     (03/07)     White - Chart • Yellow - Patient

## Exhibit B

**WAIVER OF PRESENTMENT IN THE NEAREST DISTRICT**

I, _Silvestre Rico_, have been advised of my right to appear before the nearest

available Federal Magistrate Judge for a presentment in this case in the _Southern_

District of _New York_. I hereby waive that right and agree to be transported to the Southern

District of New York for initial Appearance before a Federal Magistrate Judge in that

jurisdiction.

Date _7 / 23 / 07_

Signature of Defendant _Silvestre Rico 7-23-07_
Witnessing Agent _7-23-07_
Witnessing Agent _7-23-07_

29

## Exhibit C



## and Customs
## Enforcement

### DECLARACIÓN DE DERECHOS

Antes de que le hagamos cualquier pregunta, Ud. debe conocer sus derechos.

S.A Ud. tiene derecho a permanecer callado(a).

Cualquier cosa que Ud. diga puede usarse en su contra en un tribunal o en cualquier otro
SA procedimiento.

Ud. tiene derecho a consultar un abogado antes de que Ud. haga cualquier declaración o conteste
S.A cualquier pregunta.

S.A Ud. tiene derecho a tener un abogado presente con Ud. durante el interrogatorio.

Si no puede pagar un abogado, se le proporcionará uno antes de que le hagamos cualquier
SA pregunta, si Ud. lo desea.

Si decide responder a nuestras preguntas ahora, Ud. aún retiene el derecho de detener el
S.A interrogatorio en cualquier momento, o de detener el interrogatorio para el propósito de consultar
con un abogado.

### RENUNCIA A LOS DERECHOS

Me han leído y explicado esta declaración de mis derechos y entiendo completamente estos
derechos.  Renuncio a ellos libre y voluntariamente, sin ser amenazado(a) ni intimidado(a), y sin
promesa de compensación o inmunidad.  Fui detenido(a) a la(s) _____ (hora), en el
_____ (fecha), y he firmado este documento a la(s) 2112 (hora), en el 07/23/07
(fecha).

Silvestre Rico                           Silvestre Rico
Nombre                                   Firma

Testigo: Daniel Key                      Fecha: 07/23/07

Testigo: _____                Fecha: 7/23/07

15

Exhibit D
Page 1

**07 MAG    1202**

Approved:    _BCM·G_
             BRENDAN R. MCGUIRE
             Assistant United States Attorney

Before:      HONORABLE MICHAEL H. DOLINGER
             United States Magistrate Judge
             Southern District of New York

- - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA       :
                               :        **COMPLAINT**
             -v-               :
                               :        Violation of
CARLOS PENA ONTIVEROS,         :        21 U.S.C. § 846
SILVESTRE RICO BELTRAN, and    :
HENRY LNU,                     :
                               :        COUNTY OF OFFENSE:
             Defendants.       :        BRONX
- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          CHRISTOPHER MCCLELLAN, being duly sworn, deposes and
says that he is a Special Agent with Immigration and Customs
Enforcement ("ICE"), and charges as follows:

                          Count One

          1.    In or about July 2007, in the Southern District of
New York and elsewhere, CARLOS PENA ONTIVEROS, SILVESTRE RICO
BELTRAN, and HENRY LNU, the defendants, and others known and
unknown, unlawfully, intentionally, and knowingly did combine,
conspire, confederate and agree together and with each other to
violate the narcotics laws of the United States.

          2.    It was a part and an object of the conspiracy
that CARLOS PENA ONTIVEROS, SILVESTRE RICO BELTRAN, and HENRY
LNU, the defendants, and others known and unknown, would and did
distribute and possess with intent to distribute a controlled
substance, to wit, 5 kilograms and more of mixtures and
substances containing a detectable amount of cocaine, in
violation of Title 21, United States Code, Sections 812,
841(a)(1), and 841(b)(1)(A).

          (Title 21, United States Code, Section 846.)

          The bases for my knowledge and the foregoing charges
are, in part, as follows:

          3.    I am a Special Agent with ICE, assigned to the

**Exhibit D**
Page 2

Narcotics Division, and I have been personally involved in the
investigation of this matter.  This affidavit is based in part on
my conversations with other law-enforcement agents and my
examination of reports and records.  Because this affidavit is
being submitted for the limited purpose of establishing probable
cause, it does not include all the facts that I have learned
during the course of my investigation.  Where the contents of
documents and the actions, statements and conversations of others
are reported herein, they are reported in substance and in part,
except where otherwise indicated.

        4.   On or about July 22, 2007, at approximately 5:30
p.m., I, along with other ICE agents, established surveillance of
a white Ford pick-up truck with Texas license plates (the
"Truck") that was parked in the vicinity of 516 Pugsley Avenue in
the Bronx, New York.  At that time, I observed an individual
later identified as CARLOS PENA ONTIVEROS, the defendant, in the
driver's seat of the Truck, and an individual later identified as
SILVESTRE RICO BELTRAN, the defendant, in the passenger's seat of
the Truck.  ONTIVEROS and BELTRAN got out of the Truck, and then
met with two or three individuals in a park approximately 2
blocks from the Truck.  One of those individuals was later
identified by CARLOS PENA ONTIVEROS, the defendant, as HENRY LNU,
the defendant.  After meeting for approximately 20 minutes,
ONTIVEROS, BELTRAN, and HENRY LNU got into a livery cab and drove
away.

        5.   On or about July 22, 2007, from approximately 8:00
p.m. to approximately 10:00 p.m., another ICE agent observed
HENRY LNU, the defendant, go into and come out of the first floor
apartment of the two-family house located at 516 Pugsley Avenue
in the Bronx, New York on two different occasions (the
"Apartment").  The agent also observed HENRY LNU carry two
different plastic bags into the Apartment from a vehicle parked
near the Apartment.

        6.   On or about July 23, 2007, at approximately 12:30
a.m., I observed CARLOS PENA ONTIVEROS, the defendant, come out
of the Apartment, and walk to the Truck, which was still parked
in the vicinity of the Apartment.  ONTIVEROS then opened a door
on the passenger's side of the Truck and removed a dark-colored
duffel bag from the Truck.  ONTIVEROS then returned to the
Apartment carrying the bag from the Truck.

        7.   According to Department of Motor Vehicle records,
which I have reviewed, the Truck is currently registered to
"Carlos Pena" at a Texas address.  These records also indicate
that, prior to being registered to "Carlos Pena," the Truck was

**Exhibit D**
**Page 3**

registered to "Silvestre Rico" at a Texas address.

8.    According to records from an ICE database, which I have reviewed, the Truck was driven into the United States from Mexico on July 16, 2007.

9.    On or about July 23, 2007, another ICE agent requested that the Truck be inspected by a trained narcotics-detection canine handler from the Port Authority Police Department, who thereafter, at approximately 2:00 a.m., conducted an exterior inspection of the Truck using a trained narcotics-detection canine.  When the canine examined the Truck, the canine gave a positive alert in the area where the flatbed portion of the Truck meets the rear of the cab area, indicating the presence of a controlled substance or the residue of a controlled substance within the Truck.

10.    On or about July 23, 2007, at approximately 3:30 a.m., I, along with other ICE agents, approached the Apartment and knocked on the front door.  CARLOS PENA ONTIVEROS, the defendant, answered the door.  I also observed SILVESTRE RICO BELTRAN, the defendant, inside the Apartment.  Another ICE agent asked ONTIVEROS for consent to search the Apartment, and ONTIVEROS provided consent.  I, along with other agents, then entered the Apartment, and immediately upon entering the Apartment observed a heat sealing machine, vacuum sealed bags, rubber bands, and packing tape in plain view.  In addition, upon entering the bedroom where ONTIVEROS was staying, other agents observed a money counter in plain view.  At that time, ONTIVEROS and BELTRAN were placed under arrest.

11.    Following his arrest, another ICE agent asked CARLOS PENA ONTIVEROS, the defendant, for consent to search the Truck, and ONTIVEROS provided both verbal and written consent to search the Truck.  Following a search of the Truck, other ICE agents found 13 half-bricks of a white powdery substance in a secret compartment located in the firewall that divides the engine area from the interior of the Truck.  The white powdery substance was later field tested for the presence of narcotics and weighed.  The substance tested positive for the presence of cocaine, and weighed a total of approximately 7 kilograms.

12.    Following his arrest, another ICE agent advised CARLOS PENA ONTIVEROS, the defendant, of his <u>Miranda</u> rights, and he waived those rights in writing.  Among other things, ONTIVEROS stated the following:

a.    This is the sixth time he and SILVESTRE RICO

3

**Exhibit D**
Page 4

BELTRAN, the defendant, have transported cocaine from Texas to the Apartment for HENRY LNU, the defendant.

b.   Over the course of the six trips, he and BELTRAN have transported a total of approximately 38 kilograms of cocaine for HENRY LNU.

c.   HENRY LNU paid him a total of approximately $27,000 for transporting the cocaine on those six occasions, and paid BELTRAN a total of approximately $7,700.

d.   During the meeting at the park with HENRY LNU the previous day, HENRY LNU asked him, "Do you have it?"  In response, ONTIVEROS said, "Yes," and then he and HENRY LNU further discussed the narcotics transaction.

e.   He purchased the Truck from BELTRAN earlier this year for approximately $3,000.

13.   Following his arrest, another ICE agent advised SILVESTRE RICO BELTRAN, the defendant, of his Miranda rights, and he waived those rights in writing.  Among other things, BELTRAN stated the following:

a.   He has transported cocaine from Texas to the Bronx, New York with CARLOS PENA ONTIVEROS, the defendant, for HENRY LNU.

b.   HENRY LNU would give him and ONTIVEROS $18,000 as payment for each kilogram of cocaine that they transported.

c.   HENRY LNU usually paid BELTRAN $2,500 per kilogram of cocaine for transporting the cocaine, and usually paid ONTIVEROS $1,000 per kilogram of cocaine.

d.   Both he and ONTIVEROS transported the money received from HENRY LNU back to Texas and Mexico in the same secret compartment in the Truck where the 7 kilograms of cocaine were found.

4

8

<table>
<tr><td>

**Exhibit D**
Page 5

</td></tr>
</table>

    e.   He and ONTIVEROS participated in the loading
of the cocaine into the Truck, and the
unloading of the cocaine out of the Truck.

       WHEREFORE, deponent prays that a warrant be issued for
the arrest of HENRY LNU, the defendant, and that CARLOS PENA
ONTIVEROS, SILVESTRE RICO BELTRAN, and HENRY LNU, the defendants,
be imprisoned, or bailed, as the case may be.

_____
CHRISTOPHER MCCLELLAN
Special Agent
Immigration and Customs Enforcement

Sworn to before me this
24th day of July, 2007

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

      HON. MICHAEL H. DOLINGER
      United States Magistrate Judge
      Southern District of New York

5

9

JUDGE RICHARD SULLIVAN Fax:1212-805-7946        Oct 29 2007 06:41pm P002/002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                    Plaintiff,          No. 07 Cr. 804 (RJS)

        -v-                                                   ORDER

CARLOS PENA ONTIVEROS AND SILVESTRE
RICO BELTRAN,

                                    Defendants.

RICHARD J. SULLIVAN, District Judge:

          IT IS HEREBY ORDERED that the defendants' time to file and serve motions is

extended to November 2, 2007.  The government's time to respond is extended to November 16,

2007.  The conference scheduled for Thursday, November 29, 2007 shall proceed as scheduled.

          The parties are advised that, in the event counsel for the defendants cannot procure a

signed affidavit from the defendants before November 2, 2007, unsigned affidavits will suffice

until signatures can be obtained.

SO ORDERED.

Dated:        October 29, 2007
              New York, New York


                                              RICHARD J. SULLIVAN
                                              UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing Motion to Suppress Evidence was forwarded to Brendan McGuire, Assistant United States Attorney in charge of this case, this 2nd day of November, 2007.

/s/ Carlos A. Garcia _____
Carlos A. Garcia

## CERTIFICATE OF CONFERENCE

I, Carlos A. Garcia, hereby certify that on October 26, 2007, the undersigned counsel conferred with the Assistant U.S. Attorney in charge of the case on this motion and he was opposed.

/s/ Carlos A. Garcia _____
Carlos A. Garcia