

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

November 16, 2007

**By Hand**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street - Room 615
New York, New York  10007

   Re: <u>United States v. Carlos Pena Ontiveros and Silvestre Rico Beltran</u>
     07 Cr. 804 (RJS)

Dear Judge Sullivan:

   The Government respectfully submits this letter in opposition to the pre-trial motions filed by the defendants, Carlos Pena Ontiveros and Silvestre Rico Beltran.  In his memorandum, Ontiveros moves to suppress the seven kilograms of cocaine recovered from his truck, the $95,960 in cash recovered from an apartment at 516 Pugsley Avenue, and his post-arrest statements.  Ontiveros seeks suppression on the grounds that (1) the entry into the apartment and the subsequent arrest were unlawful; (2) the search of his truck was unlawful; and (3) his post-arrest statements were obtained in violation of <u>Miranda</u>.  In his memorandum, Beltran presents the same three arguments, and also moves to suppress his post-arrest statements on the ground that they were obtained more than six hours after his arrest, in violation of 18 U.S.C. § 3501.[1]

   For the reasons set forth below, the defendants' motions should be denied.  The evidence will show that the agents' entry and search of the apartment was lawful, and they had probable cause to arrest both defendants.  Moreover, Ontiveros provided oral and written consent to search his truck, and both defendants provided their post-arrest statements in accordance with <u>Miranda</u> and 18 U.S.C. § 3501.  However, because the defendants raise disputed issues as to material facts regarding their arrests, the searches of the apartment and the truck, and their post-arrest statements, the Government consents to a hearing on these issues.

---

   [1] As described below, the agents also recovered one kilogram of cocaine, a heat sealing machine, vacuum sealed bags, rubber bands and packing tape from the apartment. Neither Ontiveros nor Beltran has moved to suppress any of these items.

## Background[2]

As set forth in the Complaint, on July 22, 2007, at approximately 5:30 p.m., agents of the Bureau of Immigration and Customs Enforcement ("ICE") established surveillance of a white Ford pick-up with Texas license plates (the "Truck") that was parked in the vicinity of 516 Pugsley Avenue in the Bronx. (Complaint at ¶ 4).[3]  At that time, the agents observed Ontiveros sitting in the driver's seat of the Truck, and Beltran sitting in the front passenger's seat of the Truck. (Id.).  After parking, both defendants got out of the Truck, walked to a park approximately two blocks from the Truck, and met with two or three individuals. (Id.).  After approximately twenty minutes, the defendants and another individual, later identified by the defendants as "Henry," got into a livery cab and drove away. (Id.).

By this time, ICE had learned from Department of Motor Vehicle records that the Truck was currently registered to "Carlos Pena" at a Texas address, and it had been registered to "Silvestre Rico" prior to being registered to Carlos Pena. (Id. at ¶ 7).  In addition, ICE records indicated that the Truck had been driven into the United States from Mexico one week earlier on July 16, 2007. (Id. at ¶ 8).

From approximately 8:00 p.m. to approximately 10:00 p.m., on July 22, 2007, ICE agents observed Henry repeatedly enter and exit the first floor apartment of the two-family house located at 516 Pugsley Avenue (the "Apartment"). (Id. at ¶ 5).  On one of those occasions, Henry carried two plastic bags into the Apartment from a vehicle parked near the Apartment. (Id.).  At approximately 12:30 a.m., on July 23, 2007, Ontiveros came out of the Apartment, and walked to the Truck, which was still parked in the vicinity of the Apartment. (Id. at ¶ 6).  The agents observed Ontiveros open a door on the passenger's side of the Truck and remove a dark-colored duffel bag from the Truck. (Id.).  Ontiveros then returned to the Apartment carrying the bag from the Truck. (Id.).

Later that morning, ICE requested that the Truck be inspected by a trained narcotics-detection canine handler from the Port Authority Police Department. (Id. at ¶ 9).  Shortly thereafter, at approximately 2:00 a.m., the canine handler conducted an exterior inspection of the Truck using a dog trained in narcotics detection. (Id.).  When the dog examined the Truck, he gave a positive alert in the area where the flatbed portion of the Truck meets the rear of the cab area. (Id.).

At approximately 3:30 a.m., the agents knocked on the front door of the Apartment. (Id. at ¶ 10).  Ontiveros answered the door, and the agents observed that Beltran was also inside the Apartment. (Id.).  One of the agents then asked Ontiveros for consent to search the Apartment, and Ontiveros provided consent. (Id.).  The agents then entered the Apartment. (Id.).  Shortly after entering the Apartment, the agents observed a heat sealing machine, vacuum sealed bags,

---

[2]      There are additional facts relating to the background of the investigation, which are the subject of the Government's *ex parte* motion filed under seal today.

[3]      The Complaint is attached as Exhibit A.

rubber bands and packing tape in plain view.  (Id.).  In addition, upon entering the bedroom where defendant Ontiveros was staying, agents observed a money counter in plain view.[4]  (Id.).  At that time, both defendants were placed under arrest.  (Id.).

Following his arrest, Ontiveros provided both verbal and written consent to search the Truck.  (Id. at ¶ 11).  During a search of the Truck, ICE agents found 13 half-bricks of cocaine in a secret compartment located in the firewall that divides the engine area from the interior of the Truck.  (Id.)  The cocaine weighed a total of approximately 7 kilograms.  (Id.)  Both defendants later waived their right to speedy presentment in writing.[5]

In addition, both defendants provided post-arrest statements after being advised of their Miranda rights, and waived those rights in writing.  Among other things, Ontiveros stated that (1) this is the sixth time he and Beltran have transported cocaine from Texas to 516 Pugsley Avenue in the Bronx for an individual named Henry; (2) over the course of the six trips, he and Beltran have transported a total of approximately 38 kilograms of cocaine for Henry; (3) Henry paid him a total of approximately $27,000 for transporting the cocaine on those six occasions, and paid Beltran a total of approximately $7,700; and (4) he purchased the Truck from Beltran earlier this year for approximately $3,000.  (Id. at ¶ 12).

Beltran informed agents that, among other things, (1) he has transported cocaine from Texas to the Bronx with Ontiveros for an individual named Henry; (2) Henry would give him and Ontiveros $18,000 as payment for each kilogram of cocaine that they transported; (3) Henry usually paid Beltran $2,500 per kilogram of cocaine for transporting the cocaine, and usually paid Ontiveros $1,000 per kilogram of cocaine; (3) both he and Ontiveros transported the money received from Henry back to Texas and Mexico in the same secret compartment in the Truck where the 7 kilograms of cocaine were found; and (4) both he and Ontiveros participated in the loading and the unloading of the cocaine.  (Id. at ¶ 13).

Both defendants were presented on July 24, 2007 before Magistrate Judge Michael H. Dolinger who ordered that both defendants be detained.  On August 22, 2007, Indictment 07 Cr. 804 was issued against both defendants.  The case was initially assigned to the Honorable Shirley Wohl Kram and was then re-assigned to Your Honor.

---

[4]      In addition to the items observed in plain view that are listed in the Complaint, the agents recovered one kilogram of cocaine and $95,960 in cash from a trap built into the rear wall of a hallway closet.

[5]      One of the ICE agents explained the right of speedy presentment to both defendants, and both defendants waived the right orally.  The agent then asked both defendants to waive the right in writing, which both defendants agreed to do.  The agent then inadvertently asked each defendant to sign a form entitled "Waiver Of Presentment In The Nearest District," rather than the form for waiver of the right to speedy presentment.  Both defendants then signed and dated the "Waiver Of Presentment In The Nearest District" forms.

**Argument**

A.     The Search Of The Apartment Was Lawful

It is well-settled that a warrantless search may be conducted based upon the consent of an authorized third party.  See United States v. Matlock, 415 U.S. 164, 171 (1974); Koch v. Town of Brattleboro, 287 F.3d 162, 167 (2d Cir. 2002); United States v. Deutsch, 987 F.2d 878, 883 (2d Cir. 1993).  Consent to search a premises may be given by a third party who possesses "common authority over or other sufficient relationship to the premises sought to be inspected." Matlock, 415 U.S. at 171.  A third party has the requisite "common authority" if he has joint access to, or control of, the property for most purposes.  Id. at n.7.  The Second Circuit has held that "a third party consent to a search will validate the search if two prongs are present: first, the third party had access to the area searched, and, second, either:  (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access."  United States v. Davis, 967 F.2d 84, 87 (2d Cir. 1992) (McLaughlin, J.), cert. denied sub. nom, Content v. United States, 506 U.S. 928 (1992) (holding that consent of co-conspirator to search a footlocker extended to closed containers inside the footlocker belonging to defendant) (relying upon Florida v. Jimeno, 500 U.S. 248, 251 (1991)).

Consent, which may be express or implied, is a voluntary waiver of Fourth Amendment rights, and the waiver need not necessarily be knowing and intelligent.  See Schneckloth v. Bustamonte, 412 U.S. 218, 235, 241 (1973); United States v. Garcia, 56 F.3d 418, 422-23 (2d Cir. 1995). To determine whether consent was voluntarily given, courts examine the totality of the circumstances surrounding the consent.  Schneckloth, 412 U.S. at 227; Garcia, 56 F.3d at 423; United States v. Puglisi, 790 F.2d 240, 243 (2d Cir. 1986).  The relevant factual inquiry is guided by an "objective standard," and the ultimate question is whether "the officer had a reasonable basis for believing that there had been consent to the search."  Garcia, 56 F.3d at 423; see also Jimeno, 500 U.S. at 251 ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?").

Both defendants claim that the agents' entry into the Apartment was unlawful as it was based upon a ruse.  They claim that the agents tricked them into opening the front door by having a female agent ask to use the bathroom.  (Ontiveros Affidavit at ¶ 1; Beltran Affidavit at ¶ 4).  The defendants claim that the agents then entered the Apartment and began to search it. (Ontiveros Affidavit at ¶ 1; Beltran Affidavit at ¶ 5).  These claims are false.  The Government expects the evidence to show that the agents knocked on the front door of the Apartment where the defendants were staying.  Ontiveros then answered the door, and one of the agents asked Ontiveros for consent to search the Apartment.  Ontiveros then voluntarily provided consent. The agents then entered the Apartment, and conducted a consensual search.  During the search, they observed a money counter, a heat sealing machine, vacuum sealed bags, rubber bands, and packing tape in plain view, and recovered one kilogram of cocaine and $95,960 in cash from a trap in a hallway closet.

B.  The Agents Had Probable Cause To Arrest The Defendants

A warrantless arrest is fully justified if there is "probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983); accord United States v. Ceballos, 812 F.2d 42, 50 (2d Cir. 1987). To establish probable cause, "it is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed." Cruz, 834 F.2d at 50 (quotation omitted). Rather, probable cause merely requires a "fair probability" under the "totality of the circumstances" that the defendant to be arrested has committed a crime. Illinois v. Gates, 462 U.S. 213, 238 (1983). It "is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Maryland v. Pringle, 124 S. Ct. 795, 799 ( 2003) (quotations omitted).

The Second Circuit has held that probable cause to search or to arrest may be established based solely upon a positive alert by a dog trained in narcotics detection who has proven reliable in the past. See United States v. Glover, 957 F.2d 1004, 1013 (2d Cir. 1992); United States v. Waltzer, 682 F.2d 370, 372 (2d Cir. 1982), cert. denied, 463 U.S. 1210 (1983) ("Where designation by a dog with a record of accuracy occurs, therefore, we hold that probable cause has been established as to the person possessing the luggage.") (citing United States v. Johnson, 660 F.2d 21 (2d Cir. 1981) and United States v. Bronstein, 521 F.2d 459 (2d Cir. 1975), cert. denied, 424 U.S. 918 (1976)).

Both defendants claim that the agents did not have probable cause to arrest them. (Ontiveros Brief at 7-8; Beltran Brief at 7). Their claims simply ignore the totality of the circumstances known to the agents prior to the arrests. The Government expects the evidence to establish that the probable cause upon which the defendants' arrests were based was much more than sufficient. Before knocking on the door of the Apartment, the agents knew, among other things, that (1) the trained narcotics-detection dog indicated that the Truck contained drugs; (2) the Truck had crossed into the United States from Mexico only one week earlier; and (3) the Truck had been registered at different times to each defendant at different Texas addresses. However, the defendants were not placed under arrest until after the agents received consent to search the Apartment wherein they observed narcotics distribution paraphernalia in the form of a money counter, a heat sealing machine, vacuum sealed bags, rubber bands, and packing tape in plain view.

C.    The Search Of The Truck Was Lawful

As discussed above in Section A, a warrantless search is proper pursuant to a voluntary waiver in the form of consent. Ontiveros contends that the agents "forced" him to provide written consent to search his Truck. (Ontiveros Affidavit at ¶ 1). The Government disputes this claim, and expects that the evidence will show that Ontiveros voluntarily provided both oral and

written consent to search his Truck.

D.      The Post-Arrest Statements Were Lawfully Obtained

        In general, a defendant's statements made during custodial interrogation are not
admissible against him for use in the Government's case-in-chief, unless the Government can
prove that, prior to questioning, the defendant was "warned that he has a right to remain silent,
that any statement he does make may be used as evidence against him, and that he has a right to
the presence of an attorney, either retained or appointed."  Miranda v. Arizona, 384 U.S. 436,
444 (1966).  For the Government to introduce a defendant's incriminating statement, the
Government must generally prove that the accused waived his Miranda rights voluntarily,
knowingly, and intelligently.  Id. at 475.  In determining whether a Miranda waiver is valid, the
Court is free to consider the "totality of the circumstances surrounding the interrogation."
Moran v. Burbine, 475 U.S. 412, 421 (1986).  A written waiver of rights is not required.  United
States v. Spencer, 955 F.2d 814, 819 (2d Cir. 1992).  Nor is it necessary for a person to be aware
of the consequences of being questioned for a waiver of Miranda rights to be knowing and
intelligent.  California v. Beheler, 463 U.S. 1121, 1125 n.3 (1983).  The Government must prove
waiver by a preponderance of the evidence.  See Colorado v. Connelly, 479 U.S. 157, 168
(1986).

        Both defendants claim that the agents continued to question them after they repeatedly
asked for an attorney.  (Ontiveros Affidavit at ¶ 1; Beltran Affidavit at ¶ 7).  These claims are
also false, and the Government expects the evidence to show that both defendants were advised
of their Miranda rights, and voluntarily, knowingly, and intelligently waived their rights both
orally and in writing before providing their post-arrest statements.

E.      The Waiver Of Speedy Presentment Was Lawfully Obtained

        Under 18 U.S.C. § 3501(c), a court may suppress a defendant's confession if that
confession was made during interrogation conducted more than six hours after the defendant was
arrested, and the delay in bringing the defendant before a magistrate or other judicial officer
beyond the six-hour period was unreasonable under the circumstances.  See United States v.
Fullwood, 86 F.3d 27 (2d Cir. 1996); United States v. Perez, 733 F.2d 1026, 1030 (2d Cir. 1984).
A defendant may waive his right to be presented promptly, and the waiver is a factor to be
considered in determining whether the delay in presentment was reasonable under Section
3501(c).  See United States v. Collins, 462 F.2d 792, 795-96 (2d Cir. 1972) (holding that 21
hours between arrest and confession did not constitute "unnecessary delay" when majority of
time was spent in transit, routine processing, and overnight lodging); United States v. Ospina,
2000 WL 37997, *2 (S.D.N.Y. Jan. 18, 2000).  As with a waiver of Miranda, the Government
must prove by a preponderance of the evidence that the waiver of speedy presentment was
voluntary, knowing and intelligent.  See Colorado v. Connelly, 479 U.S. 157, 168 (1986).

        Both defendants claim that the agents coerced them into providing a written waiver of
speedy presentment.  (Ontiveros Affidavit at ¶ 1; Beltran Affidavit at ¶ 10).  The Government
disputes this final claim as well.  The Government expects the evidence to show that both
defendants were advised of their right to speedy presentment, and voluntarily, knowingly, and

intelligently waived their right both orally and in writing. The Government also expects the evidence to demonstrate that the delay in presenting the defendants until the day after their arrests was entirely reasonable under the circumstances.

## **Conclusion**

For all of these reasons, and based upon the evidence that will be presented at the November 29, 2007 hearing, the Government respectfully requests that the Court deny the defendants' pre-trial motions seeking the suppression of physical evidence and their post-arrest statements.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:  /s/ Brendan R. McGuire
Brendan R. McGuire/Michael Q. English
Assistant United States Attorneys
(212) 637.2220/2594

cc:  Cristobal M. Galindo, Esq.
Counsel to Ontiveros
(via fax)

Carlos A. Garcia, Esq.
Counsel to Beltran
(via fax)