IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| Plaintiff § | | |
| § | | |
| v. § | 1:07-cr-00804-SWK | |
| § | | |
| SILVESTRE RICO BELTRAN, § | | |
| Defendant § | | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

TO THE HONORABLE JUDGE RICHARD J. SULLIVAN, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK:

1. COMES NOW, SILVESTRE RICO BELTRAN, Defendant in the above styled and numbered cause, and files this, his Supplemental Brief in Support of Defendant's Motion to Suppress Evidence that was illegally acquired by the Government and for cause would show the Court as follows:

I.

ARGUMENT

**STANDING**

2. The Fourth Amendment protects the right of the people against unreasonable searches and seizures. "At the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961). However, this right is a personal one that may only be urged by one who has been harmed by any violation of the same. Rakas v. Illinois, 439 U.S. 128 (1979) (holding defendants who failed to show neither a property interest in the vehicle searched nor the evidence seized were not entitled to challenge its search). In this case, SILVESTRE RICO BELTRAN has standing to challenge the illegal entry and search of his place of respite.

SILVESTRE RICO BELTRAN had a "reasonable expectation of privacy" in the home he chose as shelter the night and early morning hours of July 22 and 23, 2007. Katz v. United States, 389 U.S. 347 (1967) (holding that the Defendant had a reasonable expectation of privacy in a phone booth); Minnesota v. Olson, 495 U.S. 91 (1990) (holding that Defendant, who was an overnight guest in a duplex, had a legitimate expectation of privacy in the premises and thus had standing to challenge a warrantless entry). SILVESTRE RICO BELTRAN was an invited, overnight guest at 516 Pugsley Avenue and was found in bed, with "the blankets…pulled over his head". Official Transcript p.282, ¶ 22.

3. SILVESTRE RICO BELTRAN'S status as an overnight guest, alone, satisfies the standing requirements as proscribed by the Supreme Court. Olson, at 96-97. SILVESTRE RICO BELTRAN'S expectation of privacy "in his host's home merely recognizes the everyday expectations of privacy that we all share". Id. at 98. The Government in this case, violated SILVESTRE RICO BELTRAN'S Constitutional right against unlawful entry. The facts in this case illustrate his proper standing to challenge the warrantless entry and subsequent search and seizure.

**UNLAWFUL SEARCH BEGAN AT THE CURTILAGE**

4. No search or seizure occurs unless the Government has made a physical invasion of the Defendant's 'house or curtilage'. United States v. Reilly, 76 F.3d 1271 (2d Cir.1996) (quoting from Olmstead v. United States, 277 U.S. 438, 466 (1928)). The Supreme Court has pronounced a number of factors to be considered by a reviewing court when deciding upon the protections afforded the curtilage of the home. United States v. Dunn, 480 U.S. 294, 300 (1987). The factors are:

1. "the proximity of the area claimed to be curtilage to the home:"
2. "whether the area is included within an enclosure surrounding the home;"
3. "the nature of the uses to which the area is put;" and

4. "the steps taken by the resident to protect the area from observation by people passing by." Id. at 301.

5. In this case, 516 Pugsley Avenue was the only property surrounded by a fence of roughly six feet. See Government's Exhibit 2. That fence (directly off the sidewalk) had to be unlatched before opening. Official Transcript p.271, ¶¶ 14-20 (Testimony of Agent Richard Johnson). The curtilage claimed by SILVESTRE RICO BELTRAN began at the iron fence used to enclose vehicles. Based on the length of the vehicles parked within the enclosure, this area is close in proximity to the home. The area is included within an enclosure surrounding the home. See Government's Exhibit 2. In the front of the property, the enclosure is used to secure personal property (i.e. vehicles etc.). In the rear of the property, the enclosure was used to shield its occupants from passersby. See Government's Exhibit 2 (the chain-link fence has opaque, white metal through the links).

6. Furthermore, once beyond the two enclosures (the front gate and the side gate), Agents for the Government went further in their zealousness to find what they sought. The Government stood directly under the covered patio where the air conditioner (window unit was installed) Official Transcript p.283, ¶¶ 7-17 (Testimony of Agent Richard Johnson). Agents were knocking on the window between fifteen and twenty minutes. Official Transcript p.164, ¶¶ 3-4 (Testimony of Agent Stephen Lee). Agent Lee, who testified to meeting with the Government before providing testimony in court, denied being able to move the air conditioning unit or peer through the rear window when directly questioned by the Court. Official Transcript p.161 ¶¶ 9-16 and p.163 ¶¶ 15-19. Yet, Agent Richard Johnson, who did not meet with the Government before providing his testimony, easily recalled "Yeah, probably there was movement of the air conditioner, yes…"

Question: "To move it over, correct?"

Answer: "Yeah."

Question: "So you could have a better view of what was inside, correct?"

Answer: "Yes." Official Transcript p.284 ¶¶ 1-7 (Testimony of Agent Richard Johnson).

7.      The physical manipulation of the window unit and its cardboard/accordion sides is akin to the tactile exploitation of a bag in Bond v. United States, 529 U.S. 334 (2000).  In that case, Chief Justice Renquist held that the manipulation of petitioner's bag in an exploratory manner violated the Fourth Amendment's proscription against unreasonable searches and seizures. Id.

8.      Agents for the Government had other less intrusive means by which to reach the same result.  Agents could have sought to gain a warrant to search.  Agents could have waited until the target of their investigation left the home.  Agents could have waited for daylight.  The Government did none of these things, but instead sought to circumvent the Constitution's protection against unreasonable searches and seizures by mining out their exploration without judicial oversight.

**CONSENT TO ENTER**

9.      A warrantless entry is per se unreasonable and the burden is on the Government to prove that one of a few narrow exceptions applies to the facts. United States v. Mapp, 476 F.2d 67 (2d Cir.1973).

10.     SILVESTRE RICO BELTRAN never consented to the warrantless entry at 516 Pugsley. Official Transcript p.176, ¶¶ 13-18 (Testimony of Agent Stephen Lee).  In fact, Agents for the Government knew before entering that he refused to allow ingress to the residence. Official Transcript p.25, ¶¶ 12-13; p.50, ¶¶ 3-12 (Testimony of Agent Mildred Marin); p.286, ¶¶ 4-13; p.288, ¶¶ 13-24 (Testimony of Agent Richard Johnson).  Further, before gaining entry Agents witnessed SILVESTRE RICO BELTRAN cower under his blankets as they demanded entry for over twenty minutes. Official Transcript p.282, ¶ 22.  SILVESTRE RICO BELTRAN'S actions alone would have given the unequivocal impression that the Government's intrusion was not

welcome. In *Georgia v. Randolph*, the Supreme Court held that a physically present co-occupant's refusal to permit entry renders warrantless entry and search unreasonable and invalid as to him. Georgia v. Randolph, 547 U.S. ____ (2006).

> "Since the co-tenant wishing to open the door to a third party has no recognized authority in law or social practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering that the officer would have in the absence of any consent at all." Id.

11.   In this case, Agents knocked on SILVESTRE RICO BELTRAN'S window for at least twenty minutes with metal flashlights and batons. They watched as he hid under his blankets and by his actions and instructions to his co-occupant denied them entry. Yet, the Agents here were engaged in the "often competitive enterprise of ferreting out crime"[1] and as such were blinded by their target. That target, in seeking to exclude the Government, "may in his cottage bid defiance to all the forces of the Crown". Miller v. United States, 357 U.S. 301, 307 (1958). That is what SILVESTRE RICO BELTRAN attempted to do. He sought refuge in a place he felt was safe from intrusion.

**GOVERNMENT'S CASES DISTINGUISHABLE**

12.   First, the Government cites to Koch v. Town of Brattleboro, 287 F.3d 162 (2d Cir.2002) for the proposition that a third party may consent to a lawful entry. Koch involved a section 1983 suit filed in federal court by a man seeking redress from an "unlawful" entry. Though not a criminal case, the Second Circuit described in some detail the applicable consent exception to the warrant requirement. Id at 166-167. This case is distinguishable from the case at bar based on the officer's subjective knowledge of SILVESTRE RICO BELTRAN'S assertions of exclusion in actions and in words. Before SILVESTRE RICO BELTRAN could even get his clothes on, agents had already entered his bedroom and ordered him to sit on the bed. At the threshold of

---

[1] Johnson v. United States, 333 U.S. 10, 14 (1948).

the home, Agents were told by SILVESTRE RICO BELTRAN'S co-tenant of his instructions not to allow anyone entry. These words were ignored.

13. Next, the Government seeks to validate its warrantless entry by citing to United States v. Davis, 967 F.2d 84 (2d Cir.1992). There the Court held that where the defendant entrusted his possessions to a third party and his footlocker, that third party could consent to its search in the absence of the defendant. Again, this case is more like Georgia v. Randolph supra, where a non-consenting occupant of a *home* asserts a right against a warrantless entry (emphasis added). In this case, no less than two Agents for the Government heard the co-occupant state "My friend told me not to open the door to anyone". That assertion, coupled with the acts of SILVESTRE RICO BELTRAN, would have provided the undeniable conclusion that he had not consented to the warrantless entry.

14. The Government attempts to rely upon United States v. Cruz, 834 F.2d 47 (2d Cir.1987) for the agents consent to search. Again, that case does not involve a home, but rather a tractor trailer. Further, the person targeted in *Cruz* had been under surveillance for at least six weeks. In *Cruz*, officers had seen and heard construction-type manipulation of the vehicle in question before it was pulled over on the interstate. That *Terry*-kind of analysis is not applicable here. The case at bar involves the most sacred of all places, a man's home.

15. The Government's reluctance to take SILVESTRE RICO BELTRAN before a magistrate for his arraignment is sought to be justified by citing to United States v. Fullwood, 86 F.3d 27 (2d Cir.1996). *Fullwood* differs in a few respects. First, officers there had a valid warrant. Here, there was no such warrant, nor was any attempt ever made to secure one. Second, the delay in presentment was based on a weekend and that task force officers believed the defendant was in state custody and thus had "no duty to arraign him promptly". Id at 30. Here, it was a Monday morning and judicial officers and magistrates were readily available. Further, Agents

for the Government knew they had to have SILVESTRE RICO BELTRAN presented promptly. Official Transcript p.142, ¶¶ 1-4 (Testimony of Agent Stephen Lee). Third, in *Fullwood*, the defendant was not interrogated, but instead sought-out contact with the police. Fullwood at 29. Here, SILVESTRE RICO BELTRAN refused to abandon his *Miranda* Rights by refusing to sign the Government's waiver and denied involvement in any illegal activity until some seventeen hours later. Furthermore, the interrogation of SILVESTRE RICO BELTRAN was based upon assumptions of waiver, at least in part. Official Transcript p.135, ¶¶ 14-17 (Testimony of Agent Stephen Lee). Finally, the Second Circuit in *Fullwood* cautioned the Government about continued indifference to Rule 5(a) and warned about exclusion of evidence.

> "We conclude on a note of caution, however. In *Colon* we specifically warned the government about its continuing practice of unnecessarily delaying arraignments, stating that "it [is] inevitable that if the indifference to Rule 5(a) displayed in this case is routine practice, it will lead to the future exclusion of evidence." Colon, 835 F.2d 31. Nearly ten years later, it appears the government has not fully heeded our warning. We take this opportunity to reiterate our concern as to the apparent indifference on the part of some in the government to taking arrested persons before a magistrate judge "without unnecessary delay." …[h]ad the defendant confessed as a result of interrogation more than six hours after he was arrested, it would have been within the district court's discretion to exclude the statement." Fullwood, at 32.

16. The case at bar differs in the added ingredient of attempted waiver on the part of the Government. However, "[s]trategists dedicated to draining the substance out of" Rule 5a "cannot accomplish by training instructions" what *Fullwood* warned against. Missouri v. Seibert, 542 U.S. 600 (2004) (SOUTER, J., holding that officers "question first and warn later" procedure could not circumvent the protections of *Miranda*).

17. These facts are more like those of United States v. Perez, 733 F.2d 1026 (2d Cir.1984). In *Perez*, the defendant first confessed roughly eight hours after being arrested. Then, Perez made additional inculpatory statements later in the interview process. Officers delayed presentment for twenty three hours. In this case, Agent Lee procured a proposed "waiver of

speedy presentment" so that agents could continue to interrogate SILVESTRE RICO BELTRAN. Official Transcript pp.145-147 (Testimony of Stephen Lee). This waiver was executed because the Government was still searching the truck for evidence. Id at 146, ¶¶ 1-2. The search of the truck was ongoing until at least 6:30 PM on the 23rd. Official Transcript p.244, ¶¶ 2-9 (Testimony of Agent Brian Herbert). SILVESTRE RICO BELTRAN had been in custody at least eleven hours at the point when he signed a purported "waiver". Government's Exhibit 5; Official Transcript pp.124 ¶¶ 4-22 (Testimony of Stephen Lee). SILVESTRE RICO BELTRAN was not arraigned for over twenty four hours after his arrest. Official Transcript pp.181 ¶¶ 17-23 (Testimony of Stephen Lee).

18.  Under the totality of these circumstances, any evidence recovered, be it statements or tangible things from the 516 Pugsley Avenue should be suppressed as unlawfully gained and "fruit of the poisonous tree." Nardone v. United States, 308 U.S. 338, 341 (1939); Wong Sun v. United States, 371 U.S. 471 (1963).

19.  WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this motion be set down for a hearing prior to trial and that upon hearing, it be in all things granted.

Respectfully Submitted,

/s/ Carlos A. Garcia _____
Carlos A. Garcia
Attorney- in -charge
State Bar No. 24048934
Southern District of Texas Bar No. 589236
1305 East Griffin Pkwy.
Mission, Texas 78572
Tel.: 956.584.1448
Fax: 956.584.7402

## **CERTIFICATE OF SERVICE**

       This is to certify that a true and correct copy of the above and foregoing Supplemental Brief in Support of Defendant's Motion to Suppress Evidence was forwarded to Brendan McGuire, Assistant United States Attorney in charge of this case, this 28th day of December, 2007.

                                            /s/ Carlos A. Garcia _____
                                            Carlos A. Garcia