

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One St. Andrew's Plaza*
*New York, New York 10007*

July 14, 2008

**BY HAND AND ECF**

The Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
500 Pearl Street, Room 615
New York, New York 10007

> **Re:    United States v. Silvestre Rico Beltran,**
>          **07 Cr. 804 (RJS)**

Dear Judge Sullivan:

The Government respectfully submits this letter in advance of trial to request <u>in limine</u> rulings regarding the admissibility of certain evidence.  First, the Government intends to offer evidence that less than a year before the conduct charged in the Indictment, during a traffic stop in Tennessee, law enforcement officers found more than $16,000 in cash hidden in the defendant's car, which the defendant was driving at the time.  This evidence is admissible, pursuant to Rule 404(b), to demonstrate the defendant's knowledge and intent with respect to the charged conspiracy.  Second, the Government intends to offer evidence that several months before the charged conspiracy, law enforcement officers found a small amount of cocaine in the defendant's pocket.  The Government seeks to offer this evidence, pursuant to Rule 404(b), for a more limited purpose, namely, to show the defendant's knowledge of narcotics activity in general.  Third, the Government intends to offer evidence of "pedigree" information provided by the defendant to law enforcement agents on the day of his arrest.  This information should not be suppressed pursuant to the Court's order dated April 9, 2008.  Fourth, if the defendant testifies at trial and provides testimony that is inconsistent with his post-arrest statements to agents, the Government will introduce evidence of those statements.

## I.    Background

The Indictment charges Silvestre Rico Beltran and Carlos Pena Ontiveros with a conspiracy to distribute and to possess with intent to distribute more than 5 kilograms of cocaine, in or about July 2007, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846.  Ontiveros pleaded guilty to the charge on July 9, 2008.

The Honorable Richard J. Sullivan
July 14, 2008
Page 2

            The evidence at trial will demonstrate that on or about July 22, 2007, in the
Bronx, law enforcement agents observed the defendant and Carlos Pena Ontiveros in a white
Ford F350 pickup truck with Texas license plates (the "White Truck"). That truck, which was
registered to Ontiveros at a Texas address, had crossed the Mexican border just six days earlier.
A subsequent search of the truck revealed approximately 8 kilograms of cocaine concealed in a
compartment between the engine and the cab area.

            The defendants were arrested on or about July 23, 2007 inside a residence located
at 516 Pugsley Avenue in the Bronx (the "Bronx Apartment"). At the time, no one else was
inside the residence. Upon searching the Bronx Apartment, agents found a secret compartment
that contained approximately 2 kilograms of cocaine and $90,000 in cash. In addition, agents
observed drug paraphernalia in plain view, including a heat sealer, packaging materials, rubber
bands, and a money counting machine. The evidence also will show that the defendants were
each in possession of a prepaid cellular phone.

**II.      Evidence of the Money Seizure and the Defendant's Possession of Cocaine Is
           Admissible Pursuant to Rule 404(b)**

      **A.      Proffered Evidence**

              **1.      Money Seizure**

            On or about August 30, 2006, law enforcement officers in Cleveland, Tennessee
conducted a traffic stop of a green Ford F350 pickup truck (the "Green Truck"), which had
Texas license plates and was registered to the defendant at an address in Texas. The defendant
was driving southbound on Interstate-75 and had one passenger in the car with him. Law
enforcement officers found three bundles of cash, each of which contained $1,000 wrapped by
rubber bands, inside a bag with the defendant's clothing. Upon a further search of the truck,
officers found two packages concealed behind the rear seat, which were wrapped with black duct
tape. The packages contained a thick layer of cellophane plastic and, within the plastic, a large
sum of cash. In total, officers seized $16,307 in cash from Beltran and $1,000 in cash from the
passenger. In addition, officers seized three cell phones from Beltran, including two prepaid
phones, and one prepaid phone from the passenger. Following the seizure, neither the defendant
nor anyone else asserted a lawful interest in the seized property and, as a result, an order of
forfeiture was entered on or about November 1, 2006.

              **2.      Possession of Cocaine**

            On or about February 7, 2007, law enforcement officers in Hidalgo County, Texas
responded to a residence after receiving information about drug trafficking activity at that
location. When they arrived, officers observed the defendant and another individual. The
defendant had a corner-cut baggie containing a small amount of cocaine in one of his front pant
pockets. The bag of cocaine weighed approximately 1.4 grams.

The Honorable Richard J. Sullivan
July 14, 2008
Page 3


       **B.**       **Applicable Law and Discussion**

       Rule 404(b) of the Federal Rules of Evidence permits evidence of prior bad acts for the purpose of showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake of accident."  Under the Second Court's "inclusionary approach" to Rule 404(b), the admission of evidence of prior crimes, wrongs or acts is permissible for <u>any</u> purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant to an issue at trial.  <u>See</u> <u>United States v. Pascarella</u>, 84 F.3d 61, 69 (2d Cir. 1996); <u>United States v. LaSanta</u>, 978 F.2d 1300, 1307 (2d Cir. 1992), abrogated on other grounds, <u>Florida v. White</u>, 526 U.S. 559 (1999); <u>see also</u> <u>United States v. Brand</u>, 467 F.3d 179, 196 (2d Cir. 2006).

       In <u>United States v. Pitre</u>, the Second Circuit set forth the standards for assessing the admissibility of evidence under Rule 404(b):

> First, the district court must determine if the evidence is offered for a proper purpose, one other than to prove the defendant's bad character or criminal propensity.  If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an issue in the case, and, if relevant, whether its probative value is substantially outweighed by the danger of unfair prejudice.  Finally, upon request, the district court must give an appropriate limiting instruction to the jury.

960 F.2d 1112, 1119 (2d Cir. 1992) (internal citation omitted); <u>see also</u> <u>United States v. Zackson</u>, 12 F.3d 1178, 1182 (2d Cir. 1993); <u>United States v. Ramirez</u>, 894 F.2d 565, 568 (2d Cir. 1990) (citing <u>Huddleston v. United States</u>, 485 U.S. 681, 691-92 (1988)).  The Second Circuit has held that the "trial court has broad discretion to admit 'other crimes' evidence under Rule 404(b), and its ruling will not be overturned on appeal absent abuse of discretion." <u>United States v. Rosa</u>, 11 F.3d 315, 333-34 (2d Cir. 1993).

       As a preliminary matter, the Government is offering the proffered evidence in this case for a proper purpose.  "Proof of state of mind, such as intent or knowledge, is a 'proper purpose'" for admission of other crimes evidence.  <u>United States v. Teague</u>, 93 F.3d 81, 84 (2d Cir. 1996) (quoting <u>Huddleston</u>, 485 U.S. at 691).  More specifically, the Second Circuit has repeatedly approved the use of prior acts evidence to show knowledge and intent where the defendant claims he was "merely present" during a drug transaction and was not involved in the illegal activity.  <u>See</u> <u>United States v. Fernandez</u>, 829 F.2d 363, 367 (2d Cir. 1987) (per curiam); <u>United States v. Bruno</u>, 873 F.2d 555, 561-62 (2d Cir.1989); <u>United States v. Arango-Correa</u>, 851 F.2d 54, 60 (2d Cir. 1988) (upholding admission of defendant's familiarity in general with narcotics transactions to counter claim he did not know package he helped receive contained narcotics).

       Here, the defendant was (i) observed by multiple agents in a car in which

The Honorable Richard J. Sullivan
July 14, 2008
Page 4

approximately 8 kilograms of cocaine were found and (ii) arrested inside an apartment in which cocaine, $90,000 cash, and drug paraphernalia were found.  Since there will be no serious dispute about his presence in those places, or his proximity to the drugs and money, his defense at trial will necessarily include the claim that he was merely present and, thus, did not have the requisite intent or knowledge necessary to be convicted of the crime charged in the Indictment. Therefore, the Government may introduce evidence of prior acts for the purpose of showing the defendant's knowledge and intent, and may do so in its case-in-chief.  See Pitre, 960 F.2d at 1120; see also Zackson, 12 F.3d at 1183.

Just because knowledge and intent are at issue, however, the Government is not automatically entitled to introduce evidence of prior acts.  United States v. Edwards, 342 F.3d 168, 177 (2d Cir. 2003).  Instead, the next step in the Second Circuit's analysis focuses on whether the evidence is relevant to an issue in the case.  To establish that the prior act is relevant, the Government "is required to establish only a 'similarity or some connection'" between the two acts.  Brand, 467 F.3d at 197 (quoting United States v. Garcia, 291 F.3d 127, 137 (2d Cir. 2002)); see Edwards, 342 F.3d at 177 (prior acts evidence relevant if "some similarity or tangible connection [is] identified").  Thus, the two acts need not be identical, or even involve the same conduct, as long as there is a sufficient connection between them.  See Brand, 467 F.3d at 197-99 (defendant's prior possession of child pornography admissible under Rule 404(b) to show defendant's intent to engage in sexual activity with a minor).

### 1.  Money Seizure

Here, Beltran's defense will hinge on the notion that he was both an unwitting occupant of a pickup truck, driven from Texas to New York, in which 8 kilograms of cocaine were concealed *and* an unwitting guest in an apartment in the Bronx that contained $90,000 cash, among other items.  That the defendant, less than a year earlier, possessed a large, unexplained sum of cash, which was also concealed in a pickup truck that he was driving interstate, is clearly relevant to this issue.

The principal distinction between the two acts – that one involved drugs and the other involved a large sum of unexplained cash – does not detract from the essential commonality between them.  In both instances, the defendant was one of two occupants of a Ford F350 pickup truck being used for the illicit, interstate transportation of contraband.[1] Although the defendant resided in Texas and purports to be a car salesman, both incidents occurred far from Texas.  In fact, the traffic stop in Tennessee took place approximately 1,200 miles from the defendant's home, and the Bronx Apartment is approximately 2,000 miles from the defendant's home.  In both instances, the contraband was concealed within the truck.  On

---

[1]      The circumstances surrounding the seizure are undoubtedly sufficient to give rise to an inference that the money constituted contraband.  In addition to the way it was packaged and the fact that it was concealed, no one asserted a claim of legal entitlement to the money.

The Honorable Richard J. Sullivan
July 14, 2008
Page 5


both occasions, the defendant and the other occupant had prepaid cell phones in their possession. Thus, there is more than a "similarity or some connection" between the two incidents, Brand, 467 F.3d at 197, and therefore, evidence of the money seizure from the Green Truck is relevant to whether the defendant knowingly and intentionally agreed to transport the cocaine found in the White Truck.

        Moreover, a further connection exists between the two acts because the presence of a large sum of unexplained cash – one of the common tools of the drug trade – has consistently been deemed probative of a defendant's participation in drug trafficking. See United States v. Gonzalez, 922 F.2d 1044, 1056 (2d Cir. 1991); United States v. Tramunti, 513 F.2d 1087, 1105 (2d Cir. 1975); United States v. Hardwell, 80 F.3d 1471, 1490 (10th Cir. 1996) ("An individual's possession of large amounts of cash tends to show involvement in drug distribution because it is among the tools of the trade of drug traffickers."); United States v. Burgos, 254 F.3d 8, 15 (1st Cir. 2001) ("Evidence of large sums of unexplained cash is relevant to demonstrating an individual's involvement in illegal drug activities.").

        Where the defendant's knowledge or intent to commit a narcotics offense is at issue, the Second Circuit has held that the Government is permitted to introduce evidence of the defendant's prior narcotics activity. See United States v. Arango-Correa, 851 F.2d 54, 60 (2d Cir. 1988) ("To meet [the defendant's] defense that he was merely on hand to assist [a co-defendant] in receiving a shipment of paper and that he had no knowledge of the true nature of the shipment, the government's offer of proof that [the defendant] was familiar with narcotics transactions was clearly relevant and probative."); United States v. Tussa, 816 F.2d 58, 68 (2d Cir. 1987) (holding that evidence of prior narcotics-related crimes was admissible where intent was at issue); United States v. Ramirez-Amaya, 812 F.2d 813, 817 (2d Cir. 1987) (affirming admission of Rule 404(b) evidence of defendant's prior attempt to import cocaine into United States to rebut defendant's argument that he was not involved in charged cocaine importations). The evidence of other narcotics-related activity extends to the possession of "tools of the trade." United States v. Muniz, 60 F.3d 65, 69 (2d Cir. 1995); see also United States v. Roldan-Zapata, 916 F.2d 795, 805 (2d Cir. 1990) (even if drug paraphernalia related to other transactions, jury could infer they were "tools of the trade").

        Here, although no drugs were seized from the car in Tennessee, the amount of money is itself indicative of narcotics activity. Indeed, the Second Circuit has found far less sums of money indicative of drug dealing. See Gonzalez, 922 F.2d at 1056 (evidence of $4,763 in cash on defendant at time of his arrest "tended to demonstrate he was a major drug dealer"). The inference that the money seized in Tennessee was connected to narcotics activity is strengthened by the surrounding circumstances, including the way in which it was packaged, the fact that it was concealed, the possession of prepaid cell phones, and the lack of any legitimate

The Honorable Richard J. Sullivan
July 14, 2008
Page 6

claim to the money.[2]  Moreover, the traffic stop took place while the defendant was driving southbound on Interstate-75 in Cleveland, Tennessee, which is directly on route from Bronx, New York to Mission, Texas.  This provides a further connection to the charged narcotics activity, which involved the transportation of cocaine in the exact opposite direction. Cf. United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006) (prior distribution of crack was probative of defendant's knowing and intentional possession of cocaine; the prior crack sales indicated that his possession of cocaine was part of his knowing and intentional participation in "an earlier stage in the drug trafficking process").

        Thus, the jury could reasonably conclude, by a preponderance of the evidence, United States v. Ramirez, 894 F.2d 565, 569 (2d Cir.1990), that the transportation of the cash reflected his involvement in narcotics activity.  In any event, even if the Court determines that the money is not sufficiently probative of his involvement in narcotics activity, the money seizure still would be admissible, as discussed above, to show the defendant's knowledge and intent with respect to the transportation of the cocaine, in light of the similarity between the transportation of the cocaine and the transportation of the cash.

        2.        **Possession of Cocaine**

        The quantity of cocaine found on the defendant in February 2007 appears to have been more consistent with personal use than distribution.  Therefore, the Government does not seek to use the evidence of the defendant's prior possession of cocaine to show the defendant's intent to distribute cocaine.[3]

---

        [2]        The occupant of the car, Nazario Gutierrez-Castillo, told officers that Beltran had been lying when he told officers they he and Castillo were returning from a trip to Knoxville to drop Beltran's daughter off at a new residence.  Castillo told officers that, in fact, they were returning from a meeting at a motel where they picked up money for a drug trafficking organization located in Reynosa, Mexico.  According to Castillo, they were returning south to deliver the money they had picked up.  Castillo also stated that the drug trafficking organization had provided prepaid cell phones to Castillo and to Beltran.  The Government recently spoke to Castillo, who is in prison in California.  Castillo, who acknowledged that he was a close friend of the defendant, disavowed his earlier statements to the arresting officer about the defendant's involvement.

        [3]        Some circuits do permit evidence of a defendant's personal use of narcotics to show intent to distribute narcotics.  See United States v. Butler, 102 F.3d 1191, 1195-96 (11th Cir. 1997) (holding that evidence of prior drug use is relevant to prove intent; noting circuit split).  It is not clear, however, that the Second Circuit holds this view.  See United States v. Aminy, 15 F.3d 258 (2d Cir. 1994) (upholding use of defendant's possession of small quantity of heroin to show knowledge and intent despite stipulation that the quantity was consistent with personal use and not consistent with intent to distribute; expert testimony, however, established

The Honorable Richard J. Sullivan
July 14, 2008
Page 7


        Instead, the Government seeks to use this evidence for a far more limited and
direct purpose – that is, to show the defendant's knowledge in general of narcotics activity.
Given the facts of this case and the anticipated theory of defense, the defendant's knowledge of
narcotics activity is directly relevant to an issue at trial.  The Government will argue that the
evidence shows that the apartment in which the defendant was staying was essentially a stash
house.  The defendant will undoubtedly counter that because the drugs and money were
concealed, there is no evidence that he was even aware of their presence in the apartment.  The
items which were found in plain view are neither per se contraband nor obviously related to
illicit activity.  Thus, unlike the drugs and the $90,000 cash, which were concealed in a hidden
compartment, the connection between these items and narcotics trafficking would not necessarily
be apparent.  The defendant's general knowledge of narcotics activity is highly relevant because
that knowledge makes it more likely that he understood the significance of the drug
paraphernalia in plain view in the apartment.

        In Arango-Correa, 851 F.2d at 60, the Second Circuit upheld the introduction of
evidence that the defendant had some familiarity with narcotics transactions in general.  In that
case, the defendant claimed that he was merely present to assist an associate in receiving a
shipment and had no knowledge that the shipment contained narcotics.  To rebut his claim of
lack of knowledge, the prosecution introduced evidence of papers containing notations
concerning narcotics transaction three years prior to the charged conduct.  The Second Circuit
held that, in light of the defendant's claim of lack of knowledge, evidence that the defendant had
some familiarity with narcotics transactions in general was "clearly relevant and probative."  Id.
Here, the connection between Beltran's general familiarity with narcotics activity and the
purpose for which the Government seeks to use that evidence is even more direct than in
Arango-Correa.

        C.    **The Prior Acts Evidence Should Not Be Excluded Under Rule 403**

        The probative value of the money seizure and the possession of cocaine is not
substantially outweighed by the risk of unfair prejudice.  See Old Chief v. United States, 519 U.S.
172, 180 (1997) (defining "unfair prejudice" in criminal context to refer to "the capacity of some
concededly relevant evidence to lure the factfinder into declaring guilt on a ground different
from proof specific to the offense charged").  Similar conduct evidence is not unfairly prejudicial
where it is not "any more sensational or disturbing than the crime" with which the defendant has
been charged. Roldan-Zapata, 916 F.2d at 804; see also United States v. Smith, 727 F.2d 214,
220 (2d Cir. 1984) (essential inquiry under Rule 403 for admission of other crimes evidence is
whether it involves "conduct likely to arouse irrational passions").  Neither the money seizure
nor the defendant's possession of a small amount of cocaine involve conduct more inflammatory
or sensational than the charged conduct.  Additionally, the Government would, of course,
consent to a limiting instruction regarding the appropriate use of the prior acts evidence by the

_____

that the small quantity was packaged in a manner consistent with a dealer's sample).

The Honorable Richard J. Sullivan
July 14, 2008
Page 8


jury.  See United States v. Zedner, 401 F.3d 36, 50 (2d Cir. 2005).

   The defendant's claim that the proffered 404(b) evidence runs the risk of
"render[ing] a jury fatally lost in a maze of confusion" is unconvincing.  (Def.'s Mot. In Limine
¶ 10).  In fact, the evidence of each incident is quite simple and straightforward, and does not
require lengthy or complex testimony.  Moreover, no basis exists to believe the jury would be
unable to comprehend or follow an appropriate limiting instruction. See United States v. Snype,
441 F.3d 119, 129 (2d Cir. 2006) ("As the Supreme Court has frequently observed, the law
recognizes a strong presumption that juries follow limiting instructions.").

   Finally, the defendant's contention that the prior acts evidence should not be
admitted because it was never proven beyond a reasonable doubt is similarly unavailing.  (Def.'s
Mot. In Limine ¶ 10).  Rule 404(b) does not require that prior acts be proven beyond a
reasonable doubt in order to be admissible.  Rather, prior acts evidence is admissible as long as
"the jury could reasonably find by a preponderance of the evidence that the [prior] act occurred
and that the defendant committed the act." Ramirez, 894 F.2d 565 at 569; see Dowling v. United
States, 493 U.S. 342, 348 (1990).  Here, the proffered evidence provides more than a sufficient
basis for the jury to reach such a conclusion.  In fact, it seems highly unlikely that any
meaningful dispute will exist as to whether $16,000 in cash was seized from the defendant's car
in August 2006 or whether a small amount of cocaine was found in his pocket in February 2007.

### III. The Court's Suppression Ruling Does Not Preclude the Introduction of Pedigree Information Provided by the Defendant

   The Government intends to offer evidence of background, or "pedigree,"
information that the defendant provided to law enforcement agents following his arrest.  It is
well-established that the gathering of pedigree information is not subject to the requirements of
Miranda.  See United States v. Adegbite, 846 F.2d 834, 838 (2d Cir.1988).  Information provided
in response to "routine questions" that are asked for administrative purposes, such as to facilitate
the booking and arraignment of the defendant, is considered pedigree information. United States
v. Carmona, 873 F.2d 569, 573 (2d Cir.1989) (quoting United States v. Gotchis, 803 F.2d 74, 79
(2d Cir.1986)).  Pedigree information includes the suspect's name, address, height, weight, eye
color, date of birth, and age, Pennsylvania v. Muniz, 496 U.S. 582, 600 (1990), marital status,
United States ex rel Hines v. LaVallee, 521 F.2d 1109, 1113 n.2 (2d Cir.1975), and employment,
Gotchis, 803 F.2d at 79.

   This is true even where the responses to such questions turn out to be
incriminating in some respect.  Rosa v. McCray, 396 F.3d 210, 221 (2d Cir. 2005); see Gotchis,
803 F.2d at 79 (upholding admission of defendant's response to questioning about his
employment status following his invocation of his right to remain silent, even though statement
that he had been unemployed supported the inference that he intended to sell drugs); LaVallee,
521 F.2d at 1112-13 (upholding admission of the defendant's non-Mirandized responses to
questions about his marital status and number of children even though the defendant's statements

The Honorable Richard J. Sullivan
July 14, 2008
Page 9


helped to identify him as the rapist in question).

       Here, the Government intends to offer evidence of the defendant's responses to routine background questions, such as his name, address, marital status, nature of employment, names and addresses of relatives, and whether he spoke English. No basis exists to suppress any of these statements, all of which fall under this established carve-out to Miranda.[4]

## IV.    If the Defendant Testifies at Trial, the Government Should Be Permitted to Introduce the Defendant's Statements

       The Court has suppressed the statements made by Beltran to law enforcement agents on July 23, 2007. However, the United States Supreme Court has carved out various exceptions to the exclusionary rule. James v. Illinois, 493 U.S. 307, 311 (1990). The Government may, for example, use suppressed statements to impeach the defendant's trial testimony. See Harris v. New York, 401 U.S. 222, 225 (1971); Oregon v. Haas, 420 U.S. 714 (1975). This exception applies whether the testimony to be impeached is elicited on direct examination, or on cross-examination (as long as the questions on cross-examination are properly within the scope of the defendant's direct examination). United States v. Havens, 446 U.S. 620, 627 (1980).

       If Beltran testifies and denies his involvement in the charged conduct, or provides other testimony that is contradicted by his incriminating statements to law enforcement agents, the Government intends to offer evidence of those statements. The Government has previously provided defense counsel with the substance of the defendant's statements.

---

    [4]    The pedigree information was likely obtained prior to the point at which the Court deemed the delay to be unreasonable. In any event, the rationale underlying the exception for pedigree information in the Miranda context applies equally in the speedy presentment context. Questions seeking pedigree information are "normally attendant to arrest and custody" and simply "do not pose the dangers" that such rules were "designed to check." Gotchis, 803 F.2d at 79 (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)).

The Honorable Richard J. Sullivan
July 14, 2008
Page 10

**V.      Conclusion**

For the foregoing reasons, the Government's motions in limine should be granted.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:    s/ Richard C. Tarlowe
Richard C. Tarlowe
Assistant United States Attorney
Tel: (212) 637-2330